565 So.2d 1031 (1990)
F.H. McLEMORE, Jr., et ux., Plaintiffs-Appellees,
v.
Stuart G. FOX, et al., Defendants-Appellants.
No. 89-119.
Court of Appeal of Louisiana, Third Circuit.
June 27, 1990.
Rehearing Denied August 8, 1990.
*1032 Russell T. Tritico, Lake Charles, for plaintiffs-appellees.
Stone, Pigman, Walther, Wittmann & Hutchinson, John M. Landis, Mark B. Holton, New Orleans, for defendant-appellant Allstate.
Woodley, Williams, Fenet, Palmer & Norman, James E. Williams, Lake Charles, for defendant-appellant.
Stockwell, Sievert, Viccellio, Clements & Shaddock, Jeanne Sievert, Lake Charles, for defendant-appellee.
Hunter W. Lundy, Lake Charles, for defendant-appellee Marlin.
Before FORET, STOKER and YELVERTON, JJ.
*1033 FORET, Judge.
This action resulted from an automobile accident which occurred on October 26, 1982, in Calcasieu Parish, Louisiana. Plaintiff, F.H. McLemore, Jr., an employee of Marlin Drilling Company (a subsidiary of Tenneco, Inc.), was driving a Marlin leased vehicle south on Highway 171 when a north-bound vehicle driven by Stuart G. Fox allegedly crossed the center line and struck McLemore's vehicle.
The McLemores filed suit against the following parties: (a) Stuart G. Fox; (b) Allstate Insurance Company, Fox's insurer; (c) The Travelers Insurance Company (Travelers), the uninsured motorist carrier of Tenneco, Inc., insuring the vehicle McLemore was driving; (d) State Farm Mutual Automobile Insurance Company, McLemore's personal uninsured motorist carrier; (e) Marlin Drilling Company, Inc., McLemore's employer; and (f) Eastern Insurance Company, Ltd., The Central National Insurance Company and London Underwriters, as excess insurers of Tenneco, Inc. Marlin Drilling Company intervened as a subrogee and/or indemnitee for the maintenance and cure benefits it paid to McLemore.
After a four-day trial, at which liability was stipulated, the court rendered judgment against Fox, Allstate, and Travelers and in favor of plaintiffs, F.H. McLemore, Jr. and Erma McLemore.
Travelers appeals, contending that the trial court erred in applying the Louisiana Uninsured Motorist Statute, LSA-R.S. 22:1406(D)(1)(a), to the automobile policy hereinafter referred to as the TREE policy. Travelers contends that this is a "Texas" policy and that Texas law should be applied. Travelers also contends that the awards to the McLemores for loss of past and future earnings and loss of consortium are excessive and should be reduced.
Additionally, Allstate appeals the judgment of the trial court contending that the trial court erred in finding Allstate liable its uninsured/underinsured limits of $5,000. for legal interest on the entire sum awarded to plaintiffs.
The plaintiffs, F.H. McLemore, Jr. and Erma McLemore, answered the appeal, contending that the judgment of the trial court was inadequate in its awards for pain and suffering, loss of future earnings, and loss of consortium, and prayed for an amendment increasing these awards in their favor.
We affirm the judgment of the trial court, as amended.

TRAVELERS' ASSIGNMENT OF ERROR NO 1
THE TRIAL COURT ERRED IN APPLYING THE LOUISIANA UNINSURED MOTORIST STATUTE RATHER THAN TEXAS LAW TO THE TREE POLICY ISSUED BY TRAVELERS TO TENNECO.
Tenneco purchased two policies of insurance from Travelers to cover general liability and automobile liability for Tenneco and its subsidiaries. The trial court found that the policies of insurance issued by Travelers to Tenneco afforded uninsured motorist coverage to the vehicle driven by McLemore on the day of the accident. We refer to these policies as the TR-CAP policy and the TREE policy. Both policies provided liability limits in the amount of $2,000,000. The TR-CAP policy contained the requisite waiver for uninsured motorist coverage in Louisiana and provided $5,000 uninsured motorist protection. However, the TREE policy did not contain the requisite waiver for uninsured motorist coverage in Louisiana. Therefore, the trial judge found uninsured motorist coverage on the TREE policy in the amount of $2,000,000, the liability limits of the policy. The application of these policies to the McLemores' claims represents the primary issue in the case.[1]
The relevant facts necessary for a determination as to the correctness of the trial court's finding that the $2,000,000 liability limits applied to the UM coverage of the TREE policy are as follows:

*1034 (1) McLemore was in the course and scope of his employment for Marlin at the time of the accident.
(2) Marlin is a subsidiary of Tenneco, Inc., the insured under both policies issued by Travelers.
(3) The vehicle in question was leased by Marlin from a Texas dealership.
(4) Marlin has its principal place of business in Texas, although it is a foreign corporation licensed to do business in Louisiana.
(5) McLemore was a resident of Louisiana, both at the time that the vehicle was leased and at the time of the accident. The leased vehicle was issued immediately to McLemore at the time it was leased.
(6) The accident occurred in Louisiana, between McLemore and another Louisiana resident.
Travelers argues that the TREE policy does not apply to these facts because certain endorsements excluded subsidiaries of Tenneco from automobile coverage pertaining to "Texas automobiles." Therefore, Travelers contends that Tenneco is the only named insured and Marlin is not a named insured under the TREE policy.
"[F]or coverage to be afforded one must first be an `insured,' regardless of whether one owns a vehicle covered under a policy providing UM coverage. See Morris v. Mitchell, 451 So.2d 192 (La.App. 1st Cir. 1984)"; Saffel v. Bamburg, 540 So.2d 988, 991 (La.App. 2 Cir.1989), writs denied, 542 So.2d 1380 (La.1989). We must first determine whether Marlin is a "named insured" under the TREE policy.
We first note that Tenneco, Inc., et al is the named insured on the TREE policy. Under the definition of "persons insured," any person using an owned automobile or a hired automobile with the permission of a named insured is an insured under the TREE policy. It is undisputed that McLemore was using the leased vehicle with Marlin's permission. Therefore, if Marlin is a named insured, McLemore is also an insured under the TREE policy.
In order to determine whether Marlin is a "named insured" under the TREE policy, we must determine the meaning of Endorsement 8000(1) which adds the subsidiaries of Tenneco, Inc. as named insureds but also includes within this endorsement a limitation stating that this endorsement is "not applicable to Texas automobile[s]."
The policy includes no aid to this Court in defining a "Texas automobile." "Texas automobile" is never defined in the TREE policy and we have no indication as what the phrase "Texas automobile" means. Does the term "Texas automobile" mean an automobile registered and/or licensed in Texas, or principally garaged in Texas, or only used in Texas, or insured only when actually involved in an accident in the State of Texas, or manufactured in Texas, or whatever definition might possibly be attributable to the phrase in question? "Any exclusion from coverage in an insurance policy must be clear and unmistakable." Roger v. Estate of Moulton, 513 So.2d 1126, 1130 (La.1987). We find this exclusion of "Texas automobile[s]" ambiguous.
If, as appellant contends, the TREE policy was intended to apply only in Texas, the exclusion set forth above would act as excluding any "Texas automobiles" of Tenneco's subsidiaries from coverage in Texas. Insofar as the TR-CAP policy expressly excludes coverage to "Texas automobiles," we find it inconceivable that Marlin intended to have automobile coverage on all automobiles other than "Texas automobiles." As stated by the Louisiana Supreme Court recently in Capital Bank & Trust v. Equitable Life, 542 So.2d 494, 496 (La.1989):
"Insurance policies are liberally construed in favor of coverage, and exceptions to coverage are strictly construed against the insurer. LSA-C.C. art. 2056. Any ambiguity is construed in favor of coverage. Albritton v. Fireman's Fund Insurance Co., 224 La. 522, 70 So.2d 111 (1953). The insurer has the burden of proving that a policy exclusion precludes recovery. Lado v. First Nat. Life Ins. Co., 182 La. 726, 162 So. 579 (1935)."
The issue can be resolved in favor of coverage on the simple basis that Tenneco would not have reasonably intended that the TREE policy would exclude Marlin *1035 from having automobile liability coverage for "Texas automobiles" in the State of Texas.
Under this construction, Marlin Drilling Company is found to be a named insured under the TREE policy. McLemore was driving the vehicle involved in the accident with the permission of the named insured, Marlin Drilling Company, and as such, is an insured under the TREE policy.
Having determined that the TREE policy does afford automobile coverage to Marlin, we must next analyze Travelers' contention that the TREE policy was only intended to have effect in Texas and therefore, Texas law should apply.
The Louisiana Supreme Court recently stated, in a case also involving a fleet automobile policy for a national entity doing business on a national basis that: "[t]he law imposes UM coverage in this state notwithstanding the language of the policy, the intentions of the parties, or the presence or absence of a premium charge or payment." Roger v. Estate of Moulton, supra, at 1131, 1132.
In applying Louisiana law, the trial court reasoned that the TREE policy was written and delivered in the State of Louisiana for purposes of UM coverage. The trial court also found that the TREE policy insured a national entity, Tenneco and its subsidiaries, doing business on a national basis.
Despite Travelers' contention that the TREE policy was intended to apply only in Texas, there is no express limitation in the policy, limiting its applicability to Texas. We note that, pursuant to the "policy territory" definition, the policy expressly intended coverage in all of the United States. Travelers' own representative testified that the TREE policy was a national policy operating in all fifty states.
The vehicle in question was registered in Texas, leased by a Texas dealership to a foreign corporation, Marlin, doing business in Louisiana. The vehicle was issued to a Louisiana resident at the time it was rented to be principally used and garaged in Louisiana and ultimately was involved in an accident in Louisiana between two Louisiana residents. There is nothing in the TREE policy which would prevent it from providing coverage for vehicles principally garaged and used in Louisiana. Therefore, we cannot agree with Travelers' contention that the TREE policy was not intended to provide coverage outside of Texas insofar as we do not find that the language of the policy supports this contention.
Travelers contends that the applicable law is to be found in the Louisiana Supreme Court's ruling in Snider v. Murray, 461 So.2d 1051 (La.1985). Snider involved facts wherein the insurance policy was issued and delivered in Texas and covered a vehicle registered and garaged in Texas. The named insured later moved to Louisiana and was involved in an accident with an underinsured motorist. In Snider, the Supreme Court relied heavily upon Abel v. White, 430 So.2d 202 (La.App. 4 Cir.1983), and found that the applicable statute (R.S. 22:1406(D)(1)), requiring underinsured motorist coverage in the amount of bodily injury liability limits, did not apply to a policy issued and delivered in Texas. The Snider Court found that the policy at issue was not "delivered or issued for delivery in Louisiana with respect to any motor vehicle registered or principally garaged" in Louisiana and therefore, R.S. 22:1406(D)(1) was not applicable.
Subsequently, in Roger v. Estate of Moulton, 494 So.2d 1226 (La.App. 3 Cir. 1986), writ granted, 498 So.2d 1 (La.1986), this Court distinguished Snider as being inapplicable in those cases involving fleet policies doing business on a national basis. We stated in Moulton, supra, at pages 1232, 1233:
"Our careful consideration of Snider prompts the conclusion that its holding is inapposite under the facts present in this case. The record reflects that UPS conducts operations in most if not all fifty states. The nature of its business requires that it have vehicles registered and garaged in the several states in which it operates. The Liberty policy, although issued and delivered outside the State of Louisiana, provides coverage for UPS trucks and other vehicles located in *1036 Louisiana and other states. Under these circumstances, we conclude that, insofar as such policy applies to UPS motor vehicles registered and principally garaged in the State of Louisiana such policy was "issued for delivery in this state" and therefore, the provisions of La.R.S. 22:1406D(1)(a) apply."
Essentially, this Court, in Moulton, determined that the policy was constructively issued and delivered in Louisiana insofar as the policy applied to UPS vehicles registered and principally garaged in the State of Louisiana although the policy was, in fact, issued in Massachusetts and delivered in Connecticut.
After granting certiorari, the Louisiana Supreme Court agreed with the reasoning of the Third Circuit as follows:
"In addressing Roger's contentions, we first note the question of whether or not R.S. 22:1406(D)(1)(a) mandates UM coverage in this instance. We agree with the Court of Appeal determination the holding in Snider, supra, does not control. In Snider we held R.S. 22:1406(D)(1)(a) should not be interpreted to require UM coverage, not otherwise provided, in a policy delivered elsewhere to insured vehicles registered and garaged elsewhere, simply because the named insured moved to Louisiana after issuance and during the term of the policy.
While Liberty Mutual's policy was neither delivered nor issued for delivery in this state, it did provide coverage for vehicles registered garaged and licensed in Louisiana. Because of the vital interest Louisiana has in the application of the UM statute as a matter of public policy, we hold Liberty Mutual's policy, insofar as it applies to the vehicle in question, must provide UM coverage unless validly rejected."
Roger v. Estate of Moulton, 513 So.2d 1126, 1130, 1131 (La.1987).
Insofar as Moulton and this case both involve business fleet policies doing business on a national basis, we find that the law set forth by the Louisiana Supreme Court in Moulton, 513 So.2d 1126 (La. 1987), is controlling rather than the disposition in Snider v. Murray, supra.
Under these facts, we do not find that the trial court erred in applying Louisiana law and finding that the TREE policy must provide UM coverage in the amount of its liability limits insofar as there is no valid rejection or selection of lower UM limits. Thus, we agree with the trial court's finding that La.R.S. 22:1406(D)(1)(a) mandates UM coverage in the amount of $2,000,000, equal to the policy's liability limits, insofar as the policy does not contain the required waiver under Louisiana law.[2]

TRAVELERS' ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ERRED IN AWARDING EXCESSIVE DAMAGES.
Travelers also contends that the damage awards to the McLemores for past and future loss of earnings and loss of consortium are excessive and should be reduced. Based upon a review of the record, we find no clear error on behalf of the trial court and as such, find no merit in this contention.

ALLSTATE'S ASSIGNMENT OF ERROR
Allstate appeals, contending that the trial court erred in finding it liable for legal interest on the entire judgment, when the liability limits of Allstate's policy was $10,000.
The supplementary payment provision of Allstate's policy entered into evidence by Travelers states as follows with regard to the payment of interest:
"Allstate will pay ...
(c) all interest on any judgment entered in such suit until Allstate has paid, tendered or deposited in court that part of the judgment which does not *1037 exceed the limit of Allstate's liability thereon; ..."
The supplemental payment section submitted by Allstate as being effective at the time of the accident contains the following endorsement, with language limiting Allstate's interest liability:

"INTEREST LIMITATION ENDORSEMENT
It is agreed that provision 1(c) under Additional Payments Allstate Will Make, in Section I of the policy, is replaced with the following:
(c) all interest on any judgment entered in such suit until Allstate has paid, tendered or deposited in court that part of the judgment which does not exceed the limit of Allstate's liability thereon. Interest will be paid only on damages which do not exceed Allstate's limits of liability;"
Allstate contends that the trial court was in error in finding it liable for legal interest on the entire sum awarded to plaintiffs, despite its policy liability limit of $10,000. Allstate does not deny its liability for pre-judgment interest. Its position is that its liability is limited to the extent of its policy limits.
It is well settled that in ex delicto cases interest on judgments attach from the date of judicial demand. See LSA-R.S. 13:4203. There is no evidence that Allstate has either paid, tendered, or deposited its liability limits of $10,000. We find that Allstate is liable for all interest on the judgment under either version of the policy, with or without the endorsement, which attempts to limit Allstate's interest liability.
The version of the policy submitted by Allstate clearly states that Allstate will pay "[a]ll interest on any judgment entered in such suit until Allstate has paid...." The second sentence of the endorsement merely muddles the meaning of the paragraph by stating that "[i]nterest will be paid only on damages which do not exceed Allstate's limits of liability."
At best, in attempting to provide meaning to both provisions, as mandated by La. C.C. art. 2049 and 2050[3], we find that the limiting language of the endorsement does not come into play unless a tender has been made. This would reconcile the second sentence of the paragraph with the first sentence which provides that "all interest on any judgment" will be paid until a tender has been made. As stated by the First Circuit, "[t]he least that can be said of the language is that it is ambiguous and, as a matter of law, requires a construction against [the insurer] and in favor of its insured." Travelers Indem. Co. v. Reserve Ins. Co., 364 So.2d 1041, 1047 (La.App. 1 Cir.1978).
This case may be distinguished from our recent ruling in Remedies v. Lopez, 560 So.2d 118 (La.App. 3 Cir.1990), writ denied, 563 So.2d 1155 (La.1990). In Remedies, we held that the insurer was liable for interest on the full amount of the judgment from date of judgment rather than from date of judicial demand until paid. Distinguishable from the case at bar, the supplementary payments provision in Remedies clearly limited the insurer's liability for "interest on the full amount of the judgement" beginning "from the day the judgement is entered until we've offered ... up to the full limits of liability...." We find no such limiting language in the Allstate policy. The provisions relating to interest payments in the Allstate policy apply to "any judgment entered in such suit," without reference to when such interest shall begin to accrue.
This Court was faced with a similar supplemental payments provision in Petry v. Richard, 532 So.2d 286 (La.App. 3 Cir. 1988), writ denied, 533 So.2d 382 (La.1988). In Petry, the insurance policy provided that the insurer would pay "[i]nterest on all damages owed by insured as the result of a *1038 judgment until we pay, offer or deposit in court the amount due under this coverage...." Id. at page 287. Based upon this language and upon the fact that no unconditional tender of policy limits had been made, we affirmed the trial court's finding that the insurer was liable for judicial interest on the total award made to plaintiffs from the date of judicial demand until paid.
We find the provision in the Allstate policy similar to that found in Petry. As such, we find no error in the ruling of the trial court holding Allstate liable for judicial interest on the total award made to the plaintiffs from date of judicial demand until paid.

ANSWER TO APPEAL
By answer to appeal, the McLemores claim that the general damages and the award for future loss of earnings awarded to F.H. McLemore, Jr. were inadequate and additionally that the award to Mrs. Erma McLemore for loss of consortium was an abuse of discretion and should be substantially increased.
Insofar as the trial court has succinctly summarized McLemore's physical condition in his oral reasons for judgment, we quote in pertinent part:
"I'd like to discuss injuries next. And the brevity of my discussion certainly has no bearing on the severity of same. We're presented with a cervical spinal cord injury of such severity as to cause multiple lesions upon the cord, admittedly accomplished more easily by reason of pre-accident asymptomatic hypertrophic spurs encroaching into the neuroforamina bilaterally resulting in a ridged type narrowing of the cervical spinal canal. The lay testimony and the medical history negates any pre-accident cervical symptomatology. All physicians agree that the trauma precipitated, triggered, and/or aggravated sufficient to satisfy to a degree even more than by preponderance cause or relationship of his injuries with the automobile accident of October 26, 1982. Extensive medical treatment for this injury, through date, include but is not limited to: a December 17, 1982 laminectomy at C-3 through C-7, which procedure was not to improve but to simply try to stabilize; April 30, 1985, four level diskectomy at C-3-4, C-4-5, C-5-6, and C-6-7 with anterior cervical interbody fusion and decompression of nerve roots bilaterally; and a January 12, 1987 removal of hypertrophic spurs and discs at C-2-3 plus fusion. These injuries have permitted Plaintiff, since date of accident, intermittent light duty work only, which work was permitted by the physicians temporarily. But, he has now permanently been removed from the work force as of May, 1984. As to prognosis, medically speaking for future employment, Dr. Raggio said he should engage in no physical activity, be in a sheltered environment only, he was in constant pain and suffered from spasticity. Dr. Jackson, his other treating physician, has testified through deposition that he will never return to any gainful employment; no kind of work; he is in severe pain; he has permanent spasticity; this individual is absolutely sincere, but his condition is such that it has affected the whole person to the extent that he now has mental depression. The testimony of the treating physicians is not really disputed by Dr. Phillips who saw Plaintiff one time for purposes of litigation at the request of Travelers. Even Dr. Phillips conceded that the lightest work possible would be the only possibility for this man. This is confirmed by me visually. I'm not a medical doctor, but I have eyes. I can see as well as anybody else. I've had this man in my Court for four days now. I can see how he walks. And, of course, social security has put him on disability. So, all of this sort of overshadows the testimony of Mr. Simmons, the rehab expert. This gentleman is under four medications; Percodan for pain, Flexeril for muscle relaxants, Limbitrol for depression, Indocin for anti-inflammatory. And as I said at the beginning, this brief resume doesn't do justice to the severity of this man's injuryas severe as it could possibly be to the cervical area without causing complete paralysis. *1039 I think the effect is best exemplified by the testimony of Mrs. McLemore, which the Court accepts completely and the past history of this individual, a good worker all of his life, unemployed for very short periods of time, health very good, only missed work once because of pneumonia, very active socially, personally, at home. Now, he lives like a hermit. It takes two or three hours before he even dresses in the morning. He can't visit. He can't socialize with the neighbors. He doesn't even drive very much. He has difficulty putting his clothes on and taking them off. He can't do any of the household chores. He can't do much of anything. He has to lay down. He can't lay down too long. He has to sit. He can't sit too long. He has to stand. He can't stand too long. All of this with an individual that was not a complainer before, and had no problems whatsoever with his neck. And this is pertinent as to the consortium issue also. It has affected their personal life to the point where it is non-existent, whereas prior to the accident they had a very active personal life. So, that's what has happened to this man injury wise.
. . . . .
"As for pain and suffering, mental anguish, disability, et cetera, as I said, this is as a severe neck injury case as you can have, unless accompanied by paralysis. It has worked a complete deprivation of his abilities to enjoy a normal productive life at an age when such is, I suppose, one of the most important things that a person possesses. He's in constant pain, probably will get worse, if you look at his medical track record. He has not improved even with all the extensive procedures carried out. The effect on the whole man is impossible to calculate. The law understands that this is so. The minimum that I feel that I can award, under the circumstances, for his pain and suffering is $150,000.00, and I so grant it."
Under the evidence presented and in light of the trial court's reasons for judgment, we find that McLemore's general damage award of $150,000 was an abuse of discretion and that an award of $300,000 is the lowest general damage award reasonably within the court's discretion for the injuries sustained by McLemore.
McLemore was, prior to the accident, a man who received tremendous satisfaction from his work and also enjoyed keeping very active on construction projects around his home. Now he is unable to do any work for sustained periods of time and has suffered the loss of one of his main joys in life. This loss, in addition to his loss of the ability to enjoy different forms of recreation to which he was accustomed, plus the consequential mental depression from which he now suffers, justifies an award of $300,000 for general damages. As such, we amend the judgment of the trial court in this regard.
Insofar as the McLemores' answer to appeal contends that McLemore's award for future loss of earnings and Mrs. McLemore's award for loss of consortium are inadequate, we have reviewed the evidence and do not find that these awards are clearly erroneous. Therefore, we find no merit to these assignments of error.

CONCLUSION
Based upon the foregoing, the judgment of the trial court is amended to increase the general damage award from $150,000 to $300,000. In all other respects, the judgment is affirmed. Costs are to be paid by Travelers Insurance Company and Allstate Insurance Company, appellants herein.
AFFIRMED AS AMENDED.
STOKER, J., concurs and assigns written reasons.
STOKER, Judge, concurring.
I concur in the majority's holding that the so-called TREE policy of automobile insurance issued by The Travelers Insurance Company provides uninsured motorist coverage under the facts of this case. There is merit to Travelers contention that its intention (and that of the insured) was that the two policies in question, the TREE policy and the TR-CAP, were to provide *1040 coverage in different territories. The TR-CAP policy was designed to give the insured nationwide coverage, but the TR-CAP policy did not satisfy the pecularities of Texas insurance law. To satisfy Texas, Travelers issued the TREE policy to be applicable only in Texas matters. However logical this may be, the intent of the parties is absolutely immaterial. The majority opinion notes this and cites Roger v. Estate of Moulton, 513 So.2d 1126 (La.1987). That case reemphasizes that Louisiana statutory law is the source of the obligation of providing uninsured motorist coverage and not policy language or intent of the parties. Rejection of UM coverage can only be effected in the precise narrow manner prescribed by statute.[1] LSA-R.S. 22:1406(D)(1)(a). Louisiana policy is paramount.
I find it difficult to harmonize the jurisprudence or to recognize a clear theoretical guide. I wonder, for example, if Snider v. Murray, 461 So.2d 1051 (La.1985), would be decided today the same as it was in 1985. As a practical matter it may not be profitable to try to perceive some correct theory; however, the legislative and jurisprudential history of this State indicate that, considering the facts and circumstances of this case, uninsured motorist coverage under the TREE policy applies. The public policy of the State is so strong that coverage cannot even be rejected except by following with scrupulous exactness the prescribed manner of rejection laid down by the statute. Travelers made no rejection or waiver at all with respect to its TREE policy. While I am persuaded that Travelers and its insured never intended for the TREE policy to apply under the facts of this case, this position is undone, as the majority points out, by the vagueness and ambiguity presented by the TREE policy and the absence of any waiver of UM coverage.
With the other issues dealt with in the majority opinion I also concur.
NOTES
[1] The trial court also found that the TR-CAP policy was applicable to this loss to the extent of its uninsured/underinsured limits of $5,000. The applicability of this policy to this loss is not at issue.
[2] We note that the record does not contain any evidence as to what the law of Texas is in regard to rejection or selection of UM coverage.
[3] "Art. 2049.

A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective."
"Art. 2050.
Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."
[1] The nature and effect of the uninsured motorist obligation established by LSA-R.S. 22:1406(D)(1)(a) is discussed throughout the opinion in Roger v. Estate of Moulton, supra, but the following comments appearing on pages 1131 and 1132 are particularly pertinent:

The law imposes UM coverage in this state notwithstanding the language of the policy, the intentions of the parties, or the presence or absence of a premium charge or payment. Alexander v. Allstate Ins. Co., 493 So.2d 677 (La.App. 2d Cir.1986). Accordingly, to effect a valid rejection of the UM coverage under La.R.S. 22:1406(D)(1)(a), the insured or his authorized representative must expressly set forth in a single document that UM coverage is rejected in the State of Louisiana as of a specific date in a particular policy issued or to be issued by the insurer. A writing, regardless of the intention of the insured, of a less precise nature is insufficient to effect a valid rejection. This narrow reading of La.R.S. 22:1406(D)(1)(a) is in accord with the liberal construction afforded the uninsured motorist statute in order to carry out its objective of protecting an innocent insured who becomes the victim of the negligent uninsured or underinsured motorist. Hoefly [v. Government Employees Ins. Co., 418 So.2d 575 (La. 1982)]