ARMAND E. LUSTENBERGER *vs.* BOSTON CASUALTY COMPANY.

SAME *vs.* SAME.

Suffolk. January 4, 1938. — March 30, 1938.

Present: RUGG, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Insurance,* Disability. *Words,* "Regular care."

Under the provisions of a policy of disability insurance requiring that, to be entitled to payments, the insured during the period of disability "shall also be under the regular care of a legally qualified physician," there could be no recovery for periods when there was only intermittent, and not regular, care by such a physician.

TWO ACTIONS OF CONTRACT. Writ in the first action in the Municipal Court of the City of Boston dated March 27, 1935; that in the second action in the Superior Court dated August 20, 1936.

Upon removal of the first action to the Superior Court, the actions were heard together without a jury by *Greenhalge,* J., who found for the plaintiff in the sums of $822.62 and $1,402.25. The defendant alleged exceptions.

*W. J. Bannan,* (*R. W. McEnaney* with him,) for the defendant.

*C. H. Gilmore,* (*R. P. Baker* with him,) for the plaintiff.

Cox, J.   The plaintiff seeks to recover, in two actions, certain monthly indemnities under an accident insurance policy issued by the defendant.   The consolidated bill of exceptions recites that, in the first action, the instalments alleged to be due are for the period between July 18, 1934, and April 24, 1935, and in the second action, for a period extending from April 23, 1935, to and including August 24, 1936.   The amount of accident indemnity payable is $80 a month, and the premium is $7.50 payable quarterly. Paragraph A of Part II of the policy reads as follows: "TOTAL LOSS OF TIME.   If injury such as is before described shall within ten days after the occurrence of the accidental event wholly and continuously disable the Insured from performing each and every duty pertaining to his occupation, the Company will pay said Accident Indemnity for such period, not exceeding five years, as the Insured shall be so disabled and during which he shall also be under the regular care of a legally qualified physician or surgeon other than himself."   It is provided by Part VIII of the policy that "Compliance on the part of the Insured and beneficiary with all the provisions of this policy is a condition precedent to recovery hereunder and any failure in this respect shall forfeit to the Company all right to any indemnity.   No provision of the charter or by-laws of the Company not included herein shall avoid the policy or be used in evidence in any legal proceeding thereunder."

The injury, which was sustained on January 24, 1934, is permanent and "wholly and continuously disable[s] the insured from performing each and every duty pertaining to his occupation."   He received treatment at a hospital and was attended by a physician for some period of time after he left the hospital.   "There is nothing further that surgical or medical aid can do to remove said disability or improve his condition."   On May 10, 1934, the wound had healed, and on or about that date the physician informed the plaintiff that there was nothing further that medical or

surgical treatment could do for him to improve the injured hand, wrist and arm. The physician advised him at that time to massage the hand, wrist and arm and to rub "it" with olive oil. It could have been found on the evidence that nothing was said by the physician as to the length of time that massage should continue, but that the plaintiff had followed the physician's instructions and had continued the massage at his home ever since May 10, 1934. Under the terms of the policy the next premium following the injury was payable on March 22, 1934. This was paid by the plaintiff's employer and received by the defendant on May 31, 1934. No premium payments have been made since that date.

The plaintiff brought an action against the defendant in the Municipal Court of the City of Boston for the recovery of monthly indemnities under the policy for the months of April, May, and June, 1934, and judgment was entered and execution issued in favor of the plaintiff in the sum of $240 and costs. In that action the defendant requested certain rulings, two of which were: "5. The plaintiff is not entitled to recover unless the policy is kept in force by payment of its stipulated premiums. 6. In order to entitle the plaintiff to recover the monthly indemnities the premiums called for under the policy must be paid in accordance with the terms set forth, and failure to continue such payments will relieve the company from liability for further monthly indemnities." These requests were denied, and their denial was upheld by the Appellate Division. The ultimate decision was in favor of the plaintiff. No further appeal was taken by the defendant.

At the trial in the Superior Court the only issues raised in defence were (1) whether the plaintiff was wholly and continuously disabled, during the periods for which indemnity payments were sought, from performing each and every duty pertaining to his occupation; (2) the construction and interpretation of the provision requiring the care of a physician, involving (a) whether the plaintiff was under such care during the periods covered by these actions or any portion thereof, (b) if the plaintiff's disability was beyond

aid by medical or surgical care, whether such care is a condition precedent to recovery; and (3) whether payment of premiums due under the policy subsequent to the date of the plaintiff's injury and cause of his disability is a condition precedent to his recovery.

The trial judge in the cases at bar found that in the trial in the Municipal Court the defendant "raised most of the defences relied upon here as appears from the record which is a part of the record in this case" and ruled that "so far as the defences now asserted by the defendant were involved in that suit and determined by the judgment entered in it, the defendant cannot now avail itself of them and that they are not before me. In these cases the real question which the defendant seeks to raise and which under the above ruling is still open to it, is as to the construction of the clause of the contract entitled 'PART II. A. TOTAL LOSS OF TIME.'" From this we think it is clear that the judge ruled that the question of the nonpayment of premiums after May 31, 1934, was foreclosed by the judgment in the Municipal Court and was not open by way of defence in the cases tried in the Superior Court. No exception was taken to this ruling. Rule 72 of the Superior Court (1932). No question is properly before us as to its correctness and it constitutes the law of the case in respect to the issue so determined. *Murphy* v. *Hanright*, 238 Mass. 200, 203. *Glines* v. *Berry Box & Package Co. Inc.* 248 Mass. 518, 519, 520. See *Brand* v. *Suburban Land Co. Inc.* 299 Mass. 336.

The trial judge also found that at the time the action was tried in the Municipal Court there had been a complete surgical recovery, and that a finding was made by the judge of that court that the plaintiff was not then under the care of a physician or surgeon, "as services of that character can no longer be of the slightest assistance to him in facilitating his recovery. His injury is permanent in character, and if his condition improves at all, it will be due to the healing force of nature alone." From the bill of exceptions, however, it appears that upon a recommittal of the case in the Municipal Court by the

Appellate Division to the trial judge the latter found in his supplemental report that "the plaintiff was under the regular care of a legally qualified physician other than himself during the months of April, May and June, 1934." The judge of the Superior Court found further that "during the period covered by . . . [the first action, that is, between July 18, 1934, and April 24, 1935] a chip of bone worked its way to the surface and for its removal and subsequent treatment of the wound visits were made to a legally qualified surgeon on October 1, 12 and 26, 1934 and subsequent to that time the plaintiff has seen the surgeon on April 16, 1936, September 23, 1936, January 9, 1937 and April 14, 1937. I understood the doctor to say that these visits, at which no treatment was given, were for the purpose of observation, in view of the previous appearance of a bone splinter and that apart from such a possibility, there was no occasion for them. I have no reason to doubt, however, that they were all made in good faith and for the purpose indicated . . . it seems to me that so long as a patient is under the active observation of his physician as a precaution against a possible physical condition of which the accident insured against was the proximate cause, and such observation is continued in good faith, it is not an unreasonable precaution and falls within the terms of the provision of the policy already quoted, and I so find and rule. How long it may properly be continued and whether or not the provision should be held to extend to permanent injury so far healed as to no longer require attention or observation, I do not find to be questions before me for decision." The findings were for the plaintiff in both actions for the entire periods as claimed. The defendant seasonably filed a motion in each action that judgment be entered for the defendant. Both motions were denied and the defendant seasonably claimed exceptions.

The terms of an insurance policy are to be given a reasonable construction. Each party is entitled to have the contract interpreted according to the words used. The principle is fully recognized that, in construing a policy of insurance, every doubt is to be resolved against the insurer and in

favor of the insured.  *Edward Rose Co.* v. *Globe & Rutgers Fire Ins. Co.* 262 Mass. 469, 473.

We think it is clear that the plaintiff, in order to recover, must show not only that his injury wholly and continuously disabled him from performing each and every duty pertaining to his occupation but also that during the period for which he seeks indemnity payments, "he shall also be under the regular care of a legally qualified physician or surgeon other than himself."  The words of the clause of the policy which are in question should be given their natural meaning.  *Oakes* v. *Manufacturers' Fire & Marine Ins. Co.* 131 Mass. 164.  Somewhat similar provisions in insurance policies have been held valid.  *Dolan* v. *Court Good Samaritan*, 128 Mass. 437.  *Rocci* v. *Massachusetts Accident Co.* 222 Mass. 336.  *Provident Life & Accident Ins. Co.* v. *Harris*, 234 Ky. 358.  *State* v. *Trimble*, 334 Mo. 920.  *Equitable Life Assurance Society* v. *Burns*, 254 Ky. 487.

. The word "care" imports charge, oversight, watchful regard and attention.  See *Hewey* v. *Metropolitan Life Ins. Co.* 100 Maine, 523, 528, and see *Bryant* v. *Metropolitan Life Ins. Co.* 147 N. C. 181, where it is said that one who entrusts his case to a physician for regular and continuous treatment, thereby comes under the care of the physician.  See also *Great Northern Casualty Co.* v. *McCollough*, 96 Ind. App. 506, where one was held to be under the "professional care and regular attendance" of a physician who, while away from her home for four weeks, followed the instructions of her physician as to what she should do and "how she should move and exercise her [injured] wrist."

The policy in the cases at bar, however, requires that the care shall be "regular."  The word "regular" when used as an adjective occurs in a wide variety of phrases, and the meanings given for the term vary considerably, depending upon the noun which it is meant to qualify.  *Commonwealth* v. *Peoples Express Co.* 201 Mass. 564, 582.  *Wilson* v. *Gray*, 127 Mass. 98.  *Chase* v. *Philadelphia & Reading Railroad*, 135 Mass. 347.  *Moloney* v. *Selectmen of Milford*, 253 Mass. 400.  *Street Commissioners of Hagers-*

*town* v. *Williams*, 96 Md. 232, 237. *Palle* v. *Industrial Commission of Utah*, 79 Utah, 47. *Barlow* v. *Shawnee Investment Co.* 229 Mo. App. 51. See *Rocci* v. *Massachusetts Accident Co.* 222 Mass. 336, 344; *S. C.* 226 Mass. 545.

In the cases at bar, there was evidence that the physician who had attended the plaintiff informed him, on or about May 10, 1934, that there was nothing further that medical or surgical treatment could do to improve the hand, wrist or arm. The physician "advised him at that time to massage the hand, wrist and arm and to rub it with olive oil." "I don't think I told him when to stop. I simply told him to massage his hand and soak it in hot water and use it in those things that he was able to use it without discomfort. I don't think I told him to do that for two months or any particular length of time. In my own mind I didn't think he would continue more than the length of time when it would seem of some use to him, which was ordinarily a matter of two or three months." While it is true that the plaintiff testified that he had followed the physician's instructions and had massaged his hand, wrist and arm and "rubbed them with olive oil at his home ever since," yet we do not think it could be found on this record that the plaintiff was "under the regular care" of a physician merely because he followed these instructions and continued the massage treatment. *Hewey* v. *Metropolitan Life Ins. Co.* 100 Maine, 523, 528. See *Haggerty's Case*, 298 Mass. 466. A finding was required, if not in fact made, that there was a definite termination of the care of the physician on May 10, 1934.

It is clear that the "regular care" which is required by the clause in question, by necessary construction, relates to the injury for the results of which indemnity is sought. It is not difficult to think of injuries which "wholly and continuously disable" a person and which well may require such "regular care" for long periods of time. In an appropriate case the burden imposed on the insurer by the policy may be a heavy one. In other cases, the severity of the injury may seem to bear heavily on the insured, if the nature

of the injury itself calls for "regular care" for only a comparatively short space of time.  We think the term connotes continuity, although it may be impossible to limit it as to precise intervals of time.  A person seriously ill with pneumonia may require regular care several times a day, at least until the crisis of the disease has passed, while a person whose appendix has been removed may require such care only at much longer intervals.  The required care and its regularity must of necessity depend upon the nature of the injury or illness and the progress of the patient.

We do not think that on this record the plaintiff is shown to have been under the regular care of a physician within the meaning of those words as used in the policy of insurance.  The plaintiff seeks to recover benefits in the first case for the period between July 18, 1934, and April 24, 1935, and the only medical attendance during this period was on October 1, 12 and 26, 1934.  The period covered by the second case is from April 23, 1935, to August 24, 1936, and only once in those sixteen months, that is, on April 16, 1936, which was eighteen months after the last visit, did the plaintiff see a physician, at which time no treatment was given.  On May 10, 1934, there appeared to be no occasion for further care and in fact there was no such care until nearly six months later.  It is true, as the trial judge found, that in October, 1934, medical or surgical treatment was given for a condition which apparently related to the original injury, but there is the further finding that the visits after October, 1934, were "for the purpose of observation, in view of the previous appearance of a bone splinter and that apart from such a possibility, there was no occasion for them."  There is no suggestion of a subsequent appearance of a bone splinter or of any symptom of one.  The provision in the policy requiring the regular care of a physician as one condition of recovery was not unreasonable, and, as was said in *Rocci* v. *Massachusetts Accident Co.* 222 Mass. 336, 343, "It is for the parties to decide whether they want that kind of insurance."  The trial judge was not warranted in finding for the plaintiff.

The result is that in the opinion of a majority of the court the defendant's exceptions must be sustained and judgment must be entered for the defendant in each case.

*So ordered.*