Joseph L. **FRATUS**, Stephanie L. Fratus and Carissa M. Fratus, p.p.a. Stephanie L. Fratus

v.

**REPUBLIC WESTERN INSURANCE COMPANY.**

C.A. No. 94–0385B.

United States District Court, D. Rhode Island.

May 29, 1997.

See also, 575 A.2d 989.

Fred T. Polacek, Rodio & Ursillo, Ltd., Providence, RI, for Joseph L. Fratus, Stephanie L. Fratus, Carissa M. Fratus, p.p.a. Stephanie L. Fratus.

Jeffrey C. Schreck, Brown, Rudnick, Freed & Gesmer, Ltd., Providence, RI, for Republic Western Ins. Co.

*OPINION*

FRANCIS J. BOYLE, Senior District Judge.

Plaintiffs bring this diversity action against defendant insurer to recover under six insurance policies issued by defendant.

Plaintiff Joseph Fratus was employed by the State of Rhode Island to control traffic about a road construction site on Interstate Route 295 in the City of Cranston. On June 4, 1985, a U–Haul truck operated by defendant Joseph T. Obert ("Obert") was rented in Worcester, Massachusetts from U–Haul Co. of Western Massachusetts by Obert's employer, American Drywall Company, Inc. ("Drywall"). Obert was to pick up construction materials in Rhode Island and return them to Massachusetts. The truck veered into the construction site striking plaintiff Joseph Fratus and another state employee. The injuries suffered by Fratus rendered him a paraplegic.

Plaintiffs brought a diversity action in this court against Drywall, Obert and a bevy of U–Haul companies. The U–Haul defendants included the following: U–Haul Co. of Western Massachusetts, a Massachusetts corporation, from whom the truck was leased; Amerco Lease Co., a Nevada corporation, which held title to the truck; and U–Haul Co. of Western Michigan, a Michigan corporation, the registered owner of the truck. Following jury verdicts, judgments were entered in favor of plaintiffs. The jury returned verdicts against Obert and Drywall, his employer, and awarded damages to Fratus, Stephanie L. Fratus, his wife, and Carissa M. Fratus, his daughter. The jury awards were substantial: $2,900,00 to Fratus; $20,000 to his wife; and $250,000 to his daughter. On December 14, 1988, judgments were entered on the jury verdicts. (Following the litigation described below, a further form of Judgment was entered on July 2, 1990.) The plaintiffs calculate that the verdicts plus pre-judgment interest amount to $4,100,600 for Fratus; $28,200 for

his wife; and $353,500 for his daughter. The jury also returned verdicts in favor of the U–Haul defendants on plaintiffs' claim that the truck operated by Obert had a defective brake system. On January 27, 1989, the defendant U–Haul companies moved to certify to the Rhode Island Supreme Court the issue of whether or not the U–Haul companies were jointly and severally liable for the judgments under the law of the State of Rhode Island. This court granted the motion by order dated March 30, 1989. The Rhode Island Supreme Court filed its opinion on June 5, 1990. It held that the U–Haul companies were not jointly or severally liable under Rhode Island law. *Fratus v. Amerco*, 575 A.2d 989 (R.I.1990). Therefore, the only parties liable after the Rhode Island Supreme Court ruling were Obert and Drywall. There is no entry in the docket of this court which suggests any further action in this court in the action against the U–Haul defendants.

No payments of any kind were made to plaintiffs before October 20, 1994. On that date, Republic Western Insurance Company ("Republic Western"), as the insurer of Obert and Drywall, paid the policy limit of one of the policies, number RL 01000, of $25,000 to plaintiffs. The named insured were Amerco (successor owner of the vehicle), U–Haul International, Inc., and their subsidiaries, affiliated, associated or allied companies. Republic Western Insurance Company agrees that this policy is available to plaintiffs' benefit as Obert and Drywall are insureds within its terms.

Plaintiffs brought this action in part seeking payment from Republic Western Insurance Company of interest on the judgments from December 14, 1988, the date of entry, to October 20, 1994, the date of payment of $25,000 by defendant. Additionally, plaintiffs make claims for the proceeds of five other policies of insurance issued by defendant claiming that the policies insured defendants. Obert and Drywall. Plaintiffs make these claims against Republic Western as insurer for Obert and Drywall, and not against the U–Haul defendants.

Republic Western insurance policy RL 01000 is a basic business automobile insur-

ance policy. Both parties concede that the proceeds of this policy are available for plaintiff's benefit. The policy limits are the particular minimum responsibility insurance coverage of the state in which the loss occurs, in this instance, Rhode Island. With respect to post-judgment interest, in relevant part, the policy provides:

Part IV. B. WE WILL ALSO PAY

In addition to our limit of liability, we will pay for the insured: . . .

5. All interest accruing after the entry of judgment in a suit **we** defend. **Our** duty to pay interest ends when **we** pay or tender **our** limit of liability (emphasis in original).

This is a typical standard interest clause. The defendant does not dispute that it is liable under the insurance policy for the policy limit of $25,000, and it has paid that amount. The issue is whether the defendant must pay interest on the entire total amount of the judgments exclusive of prejudgment interest ($3,170,000), from the date of their entry to the date of payment of the policy proceeds or only interest on the policy limit of $25,000. Literally, the question is a million dollar question.

As a preliminary matter, there is a vociferous dispute between the parties concerning the law which is to be applied to the insurance contracts. Defendant urges that the law of the Commonwealth of Massachusetts applies. The plaintiffs contend that the law of Rhode Island applies. In the end, this situation is what has been described much earlier as much ado about nothing. As will appear, it makes no difference which law applies because the application of either state's law leads to the same conclusion.

The Republic Western insurance policies in question in this matter contain no choice-of-law provision. There is no Massachusetts or Rhode Island statute or common law which specifically addresses the import of this standard interest clause. Therefore, it is necessary to look for guidance to other states and courts which have interpreted and applied the clause.

■ In general, insurance policies are to be construed by applying the rules of construction for written instruments. *Tyler v. Treasurer & Receiver Gen.*, 226 Mass. 306, 115 N.E. 300 (1917). The words of a contract of insurance are to be given their plain and ordinary meaning. *Jacobs v. U.S. Fidelity & Guar. Co.*, 417 Mass. 75, 627 N.E.2d 463, 464 (1994); *see also Rocci v. Mass. Acci. Co.*, 222 Mass. 336, 110 N.E. 972, 973 (1916). If the terms are clear and unambiguous, they must be applied as written. *See Cody v. Conn. Gen. Life Ins. Co.*, 387 Mass. 142, 439 N.E.2d 234, 237 (1982); *Factory Mut. Liability Ins. Co. of Am. v. Cooper*, 106 R.I. 632, 262 A.2d 370, 372 (1970). In order to determine if the plain and ordinary meaning of the contractual language is sufficient guidance to the court, the court should not strain to identify an ambiguity where one does not exist. *See Lustenberger v. Boston Cas. Co.*, 300 Mass. 130, 14 N.E.2d 148, 150 (1938); *Rocci*, 110 N.E. at 973; *Mallane v. Holyoke Mut. Ins. Co. in Salem*, 658 A.2d 18, 20 (R.I.1995).

■ The language in Republic Western policy RL 01000 is clear and unambiguous. It provides that the defendant will pay certain sums "... in addition to our limit of liability." Among the various items is listed an obligation to pay "all interest accruing after the entry of judgment." The contract reads "all interest," not "partial interest" or "no interest." It is undisputed that a judgment was rendered against Obert and Drywall, the insureds. Interest began to accrue when judgments were entered: December 12, 1988. The defendant did not pay its $25,000 limit of liability until October 20, 1994. Therefore, a straightforward reading of the policy language establishes that the defendant contractually committed itself to pay all interest accruing on the judgments between December 12, 1988, and October 20, 1994. *See Wilkerson v. Md. Cas. Co.*, 119 F.Supp. 383, 389 (D.C.Va.1953), *aff'd* 210 F.2d 245 (4th Cir.1954); *McLemore v. Fox*, 565 So.2d 1031, 1038 (La.App. 3d Cir.1990); *Weber v. Biddle*, 4 Wash.App. 519, 483 P.2d 155, 161–62 (1971).

■ It is well settled that post-judgment interest shall be calculated in accord with federal law. 28 U.S.C. § 1961(a); *Loft*

*v. Lapidus,* 936 F.2d 633, 639 (1st Cir.1991) (post-judgment interest is determined by federal law, not state law, even in diversity cases). *See also Grogan v. Garner,* 806 F.2d 829, 839 (8th Cir.1986); *Home Life Ins. Co., New York v. Equitable Equipment Co., Inc.,* 694 F.2d 402, 404 (5th Cir.1982); *Armacost v. Amica Mut. Ins. Co.,* 821 F.Supp. 75, 82 (D.R.I.1993), *aff'd* 11 F.3d 267 (1st Cir.1993). In this matter, the federal interest rate that should be used is 9.20%, which was the interest rate in effect at the time of the entry of the judgments, December 12, 1988. *See Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 835, 110 S.Ct. 1570, 1575–76, 108 L.Ed.2d 842 (1990) (post-judgment interest runs from date of judgment); 28 U.S.C. § 1961(a); Memorandum from the Admin. Office of the U.S. Courts to All Clerks, U.S. Courts 2 (Jan. 31, 1997) (on file with U.S. District Court for the District of R.I.) (details historical and current federal post-judgment interest rates).

This court will leave the precise calculation of interest to the parties in a form of judgment to be submitted to the court. Considering the circumstances, the interest will amount to a substantial sum, many times the $25,000 policy limit. The failure was the fault of the defendant insurer and the fact that the amount the insurer must pay is a substantial sum cannot be permitted to influence the application of the insurer's bargain. If the result appears absurd, it is because of the woeful behavior of the insurer and not because the legal consequences seem disproportionate, The defendant can hardly complain. The defendant could have tendered the $25,000 policy limits at any time after the entry of judgment in this court. Indeed, why it did not do so is something of a mystery since the defendant has provided no explanation why it would not have been appropriate for it to tender the policy limits. The defendant is a sophisticated insurance company with presumably long experience with this type of issue. Instead, it chose to seek an opinion of the Rhode Island Supreme Court which could, and ultimately did, relieve the deep pocket defendants from joint or several liability.

The defendant is the author of a contract provision which imposes liability for interest with pristine clarity and with an obvious purpose. When a losing defendant seeks review of a jury verdict the prevailing plaintiff must wait to get paid. The review is, for all practical purposes, a matter within the control of the insurer, absent some contractual provision to the contrary. If the insurer perceives it to be in its best interest to seek a review it may do so, but not without the obligation to reimburse the prevailing plaintiff for the denial of the use of money during the review period. This is a usual purpose of interest on judgments. What is particularly confounding about the circumstances of this action is why the policy limits were not tendered following the opinion of the Rhode Island Supreme Court which removed effectively the U–Haul defendants from liability. One could speculate that initially some caution was thrown to the winds because imposing liability in the circumstances on any of the U–Haul defendants would result in the possibility of enormous liabilities for other transactions or incidents in which U–Haul vehicles might be involved in the State of Rhode Island. This may be wool gathering of a sort but it is not unwarranted when there is no explanation provided why the sheep were not fully sheared in the first instance. What is peculiarly baffling is the fact that the Rhode Island Supreme Court opinion was filed on June 5, 1990, and the payment of the face amount of the policy was not made until October 20, 1994. The Rhode Island Supreme Court more than promptly responded to the request of this court. The payment of the face amount of the policy was not made until October 20, 1994, three years and four months later. Despite the obvious assumption that there is some sound reason for the delay, none has been advanced by the defendant.

The defendant was familiar with insurance policy language in general and drafted this particular policy. It had the option of using language which would specifically limit or exclude the payment of such interest. Instead, it chose to use this particular language. In fact, this construction of the policy provisions comes as no surprise to defendant. The insurance industry understands

that the provision is intended to require calculation of the interest to be done using the amount of the judgment and not the policy limits. *River Valley Cartage Co. v. Hawkeye–Sec. Ins. Co.,* 17 Ill.2d 242, 161 N.E.2d 101, 103 (1959). The defendant insurer must abide by the language of the contract into which it entered. The defendant cannot plead that it was not aware of the provisions of its own contract. Its flagrantly tardy failure to offer the full amount of the policy limit was the direct cause of the accrual of the massive amount of interest.

Although neither Massachusetts, nor Rhode Island, for that matter, have interpreted this specific contractual language, this conclusion is supported by case law from jurisdictions around the country. The overwhelming majority rule is that the insurer is held liable for interest on the entire amount of the judgments. *See Knippen v. Glens Falls Ins. Co.,* 564 F.2d 525 (D.C.Cir.1977); *United Services Auto. Ass'n v. Russom,* 241 F.2d 296, 303 (5th Cir.1957); *Hartford Acci. & Indem. Co. v. Aetna Ins. Co.,* 173 Ill. App.3d 665, 123 Ill.Dec. 312, 314, 527 N.E.2d 950, 952 (1988); *McLemore,* 565 So.2d at 1037; *Powell v. T.A. & C. Taxi, Inc.,* 104 N.H. 428, 188 A.2d 654, 655 (1963); *Germer v. Pub. Serv. Mut. Ins. Co.,* 99 N.J.Super. 137, 238 A.2d 713, 717 (1967); *Weber,* 483 P.2d at 161–62; Annotation, *Liability Insurer's Liability for Interest and Costs on Excess of Judgment over Policy Limit,* 76 A.L.R.2d 983.

In addition to the above claims for interest, the plaintiffs make claims for payment on the underlying judgments rendered against Obert and Drywall, asserting that other Republic Western insurance policies provide coverage for these judgments. The defendant concedes that the policy discussed above, RL 01000, provides coverage for plaintiffs' claims. However, the plaintiffs also assert that the insuring language in the five other policies is sufficient to provide coverage. The language of each of the five policies will be examined in turn to determine if they do indeed provide coverage for the underlying judgments. This review is governed by the longstanding rule that if the terms of an insurance contract are clear and

unambiguous, they must be applied as written. *See Cody,* 439 N.E.2d at 237.

### REPUBLIC WESTERN POLICY RLA 01014

■ This policy is a general liability automobile policy. This policy is an incident policy, since it provides coverage for "property damage or bodily injury which occurs during the policy period." Although the original policy period was April 1, 1982 through April 1, 1985, Endorsement 19 extends the period from April 1, 1985 through April 1, 1988. Therefore, this policy covers the accident date of June 4, 1985.

In defining who is covered by the policy, the policy reads, in relevant part:

II. PERSONS INSURED

Each of the following is an insured under this insurance to the extent set forth below: ...

(e) with respect to the operation, for the purposes of locomotion along a public highway, of mobile equipment registered under any motor vehicle registration law ...

(ii) any other person while operating with the permission of the named insured any such equipment registered in the name of the named insured and any person or organization legally responsible for such operation, *but only if there is no other valid and collectible insurance available, either on a primary or excess basis, to such person or organization* (emphasis added).

The Named Insured Endorsement supplies a consistent definition of who is insured under the policy:

Under Item One of the Declarations, the Named Insured is defined to be: Amerco, A Nevada Corporation, U–Haul International, Inc., an Oregon Corporation and their subsidiaries, affiliated, associated or allied companies, corporation firms or individuals now or hereafter constituted for which the Named Insured has responsibility for placing insurance *and for which similar coverage is not otherwise more specifically provided,* and the American Federal Credit Union (emphasis added).

The plaintiff argues that because the insuring language in RLA 01014 is the same as that in RL 01000, RLA 01014 also provides coverage to plaintiffs. Indeed, most of the insuring language is identical. However, there is an additional exclusionary clause in RLA 01014. Taking this clause into consideration, the defendant argues that the policy provides primary insurance coverage only if no other insurance policy exists.

In both of the quoted provisions of the policy of insurance which are excerpted and italicized above, there is language which specifically limits the applicability of Policy RLA 01014. The plaintiffs are correct that this policy would provide general coverage for the plaintiffs, but only if they did not have insurance coverage elsewhere. However, the plaintiffs do have alternative primary coverage under Policy RL 01000. Neither party disputes that RL 01000 provides coverage to plaintiffs. Therefore, according to the explicit terms of the policy it does not apply in these circumstances where there is insurance coverage otherwise.

REPUBLIC WESTERN POLICY RELA 01088

■ This policy provides excess liability indemnity to the insureds. This policy also is an incident policy, since it expressly "applies to injury or destruction [or occurrences] taking place during the policy period." The policy period, as stated in the policy Declarations, was April 1, 1988 through April 1, 1991. The policy term does not include the date of the accident. The policy span of April 1, 1988 through April 1, 1991 does not cover the accident date of June 4, 1985. Therefore, Policy RELA 01088 does not provide coverage for the judgments against Obert and Drywall.

REPUBLIC WESTERN POLICIES RU 01000, RU 02000 and RU 03000

These policies are commercial umbrella liability policies. These policies, too, are incident policies, since they "apply only to personal injury, property damage or advertising occurrences which happen anywhere during the policy period." Two of these policies (RU 01000 and RU 02000) cover the accident date of June 4, 1985.

■ An umbrella policy is a form of insurance protection against losses in excess of the amount covered by other liability insurance policies or for which there is no insurance. *Commercial Union Ins. v. Walbrook Ins. Co.*, 7 F.3d 1047, 1053 (1st Cir. 1993). It is a type of supplemental or excess liability policy that provides insurance coverage above basic or normal limits of liability and fills in gaps in coverage. *Id.* Policies RU 01000, RU 02000, and RU 03000 provide coverage benefits to the same insureds as RL 01000. All four policies define "insured" in the same manner. The coverage of each of the four policies is exactly the same, that is to pay the insurance proceeds " . . . by reason of the liability imposed upon the insured by law or assumed by the insured under contract." RL 01000 is a policy designed to meet the financial responsibility requirements of the respective states, including Rhode Island. This is, of course, a liability imposed by law. On the other hand, the named insureds are not subject to liability otherwise under the law of the State of Rhode Island. The Rhode Island Supreme Court has determined that the named insureds, the U–Haul companies, were not jointly and severally liable under Rhode Island's vicarious liability statute. *Fratus v. Amerco*, 575 A.2d 989 (R.I.1990). There is a total lack of even a suggestion that the named insureds assumed liability under a contract. Since the liability urged as a basis for the plaintiffs claims is not imposed by law or assumed under contract, these three policies do not provide insurance coverage to satisfy plaintiffs' judgments.

Policy RU 03000 covers the period of time from April 1, 1986 to April 1, 1987. Since the loss occurred in 1985, it does not apply to plaintiffs' loss in any event.

For the foregoing reasons, plaintiffs are entitled to receive post-judgment interest on the amount of the judgments for the period December 12, 1988 to October 20, 1994 and interest at the lawful rate on the amount due on October 20, 1994 to the date of payment. 28 U.S.C. § 1961. The precise calculation of interest shall be provided in a form of judg-

ment to be prepared by plaintiffs and presented to the court.