USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit
 ____________________

No. 97-1876

 JOSEPH J. FRATUS, ET AL.,

 Plaintiffs, Appellees,

 v.

 REPUBLIC WESTERN INSURANCE COMPANY,

 Defendant, Appellant.

 ____________________

No. 97-1955

 JOSEPH J. FRATUS, ET AL.,

 Plaintiffs, Appellants,

 v.

 REPUBLIC WESTERN INSURANCE COMPANY,

 Defendant, Appellee.

 ____________________

 APPEALS FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF RHODE ISLAND

 [Hon. Francis J. Boyle, Senior U.S. District Judge]

 ____________________

 Before

 Torruella, Chief Judge,

 Aldrich, Senior Circuit Judge,

 and Boudin, Circuit Judge.

 _____________________ Robert A. Sherman, with whom Joseph E. Boyland, Peter F.
Carr II, Ross A. Keene and Eckert Seamans Cherin & Mellott, LLCwere on brief, for appellant Republic Western Insurance Company.
 Fred T. Polacek, with whom Rodio & Ursillo, Ltd. was on brief,
for appellees Joseph J. Fratus, et al.

 ____________________

 June 23, 1998
 ____________________ TORRUELLA, Chief Judge. In a personal injury suit
stemming from a tragic accident involving Joseph Fratus, a jury
previously awarded him, his wife, Stephanie Fratus, and his
daughter, Carissa Fratus (collectively, "Fratus family" or
"plaintiffs") over three million dollars. Republic Western
Insurance Company ("Republic") -- defendant in the current action
-- defended that suit and was liable for at least $25,000 of that
judgment under a policy which indisputably applied to the accident
in question. Nonetheless, for almost six years, Republic paid
plaintiffs nothing. During that time, over one million dollars in
interest had accrued on the entirety of the original verdict. The
district court ruled that Republic was obligated, under either
Massachusetts or Rhode Island law, to pay this interest in
accordance with a policy it had issued. See Fratus v. Republic
Western Ins. Co., 963 F. Supp. 113, 116-18 (D. R.I. 1997). The
district court also ruled that the insurance company was not liable
for three million dollars of the principal judgment in the
underlying case because three additional "umbrella" coverage
policies did not apply to the defendants in that case. See id. at
119. Both parties appeal. We affirm in part, reverse, and remand
in part.

 BACKGROUND
 On June 4, 1985, Joseph J. Fratus was rendered a
paraplegic when a rented truck ran into him as he directed traffic
at a construction site in Cranston, Rhode Island. The driver of
the truck was Joseph Obert. Obert had rented the truck from U-Haul
Truck Rental in Worcester, Massachusetts on behalf of his employer,
American Drywall Company, Inc. ("Drywall"). At the time, Republic
was insuring the truck under a number of different policies which
had been purchased by U-Haul. While the scope of coverage in three
of the policies is at issue in this case, it is not disputed that
a fourth policy, Business Auto Policy No. RL-1000, provided limited
coverage to Obert and Drywall for the accident.
 When Fratus and his family sued Obert, Drywall, and U-
Haul under various theories, Republic defended the suit. A jury
returned verdicts totaling over three million dollars on
December 12, 1988, and, two days later, judgments were entered
accordingly. One question not addressed by the judgments was
whether, as a matter of law, U-Haul was vicariously liable, and
thus jointly and severally liable, in Rhode Island for the
judgments against Obert and Drywall. On January 27, 1989, U-Haul
moved to certify to the Rhode Island Supreme Court "[w]hether Rhode
Island law imposes joint and several liability on any owner of a
rental vehicle not registered or rented in, but negligently
operated by the bailee thereof, on the public highways of the State
of Rhode Island?" The motion was granted. On June 5, 1990, the
Rhode Island Supreme Court concluded that U-Haul was not jointly
and severally liable for Obert and Drywall's negligence. SeeFratus v. Amerco, 575 A.2d 989, 993 (R.I. 1990). On July 2, 1990,
the district court entered judgments consistent with the Rhode
Island Supreme Court's decision.
 Republic never disputed that it was responsible for at
least $25,000 of the judgment. According to insurance policy RL-
1000, Republic was responsible for the minimum responsibility
insurance coverage for the state in which the loss occurred, which,
in Rhode Island, was $25,000. On October 20, 1994, nearly six
years after the jury returned its verdict, and pursuant to a demand
stemming from the present litigation, Republic finally tendered
payment of the $25,000 to the plaintiffs. In the interim, however,
well over one million dollars in interest had accumulated on the
original judgments.
 Plaintiffs brought this suit under the district court's
diversity jurisdiction, arguing that, under the terms of one policy
RL-1000, Republic was obligated to pay all of the interest which
had accumulated on the original judgments. The district court
agreed that, under either Massachusetts or Rhode Island law,
Republic was obligated by the plain terms of its RL-1000 policy to
pay the interest on the judgments, despite the fact that, with the
passage of time, this obligation became one of a far greater
magnitude than payment of the policy "limits." See Fratus, 963 F.
Supp. at 116-118. Republic appeals this determination.
 Plaintiffs also argued that Republic was bound, under the
terms of three "umbrella" policies, RU-01000, RU-02000 and RU-
03000, to pay three million dollars -- the policy limits of those
policies -- of the original judgments against Obert and Drywall. 
The district court held that these umbrella policies did not apply
to the accident because only U-Haul, and not Obert or Drywall, was
insured under the policies. See id. at 119. Plaintiffs appeal
this ruling, arguing that Obert was insured as a "permissive user"
of the truck.
 ANALYSIS
I. Choice of law
 This case arises under federal diversity jurisdiction as
set forth by 28 U.S.C. 1332. Plaintiffs are Rhode Island
residents and the defendant is a Michigan-based insurance company. 
In the district court, the parties disputed whether the law of
Massachusetts -- where the truck was rented -- or Rhode Island --
where the accident occurred -- applied. However, the district
court did not resolve the question in its opinion, concluding that
"it makes no difference which law applies because the application
of either state's law leads to the same conclusion." See, 963 F.
Supp. at 116. Neither party specifically appeals this ruling, and
we conclude that the district court acted within its discretion in
bypassing the choice of law issue. A federal court sitting in
diversity need not make a finding regarding which state's law is to
be applied where the case's resolution would be identical under
either state's law. See Pediatricians, Inc. v. Provident Life &
Accident Ins. Co., 965 F.2d 1164, 1168 (1st Cir. 1992); Fashion
House, Inc. v. K Mart Corp., 892 F.2d 1076, 1092 (1st Cir. 1989).
II. Interpreting RL-1000
 According to Republic's RL-1000 insurance policy, which
indisputably covered Obert, "[i]n addition to our limit of
liability, we will pay for the insured . . . [a]ll interest
accruing after the entry of judgment in a suit we defend. Our duty
to pay interest ends when we pay or tender our limit of liability"
(emphasis in original). The insurance industry refers to this
clause as a "standard interest clause." Republic does not dispute
that it defended the underlying suit in this case. In that case,
verdicts were delivered for the plaintiffs in the amount of
$3,170,000 ($4,482,300 after computing pre-judgment interest).
Judgments were entered on the verdicts on December 14, 1988. As of
that date, RL-1000 obligated Republic to pay $25,000 to the
plaintiffs. Nonetheless, Republic did not pay the plaintiffs any
money until October 20, 1994. During the almost six years between
the trial and Republic's tender of the policy limits, well over one
million dollars in interest had accumulated on the original
judgments.
 Plaintiffs claim that Republic is bound by its contract
terms to pay this interest, in spite of the fact that the limit of
liability under the policy was only $25,000. Republic claims that
it is, at most, obligated to pay interest on $25,000 of the
judgment, since that is the limit of liability under the policy. 
Republic argues that the district court's decision produced the
"absurd" result of requiring it to pay interest worth many times
the policy limits.
 This dispute does not merit much discussion. The
contract terms could not be clearer. Republic agreed, in addition
to its limit of liability, to pay "[a]ll interest accruing after
the entry of judgment" (emphasis added) until the $25,000 was
tendered. As the district court observed, "all interest" does not
mean "partial interest." Republic essentially asks this court to
ignore the plain terms of its own policy because, under
circumstances like those in the present case, it would be obligated
to pay sums of interest that are grossly disproportionate to the
policy limits. This argument is unavailing. Where the terms of a
contract are clear and unambiguous, they must be applied as
written. See Cody v. Connecticut Gen. Life Ins. Co., 439 N.E.2d
234, 237 (Mass. 1982); Factory Mut. Liability Ins. Co. of Am. v.
Cooper, 262 A.2d 370, 372 (R.I. 1970).
 At any time after judgments were entered in this case,
Republic could have stopped the interest from accumulating by
paying the Fratuses the $25,000 that they were owed. Republic's
burden of adhering to its own contract was not onerous. Yet, to
this date, no explanation has been offered for the delay in making
the payment to which plaintiffs were entitled.
 It may, at first, seem shocking to impose this immense
obligation on Republic for a failure to deliver a relatively small
sum to the plaintiffs. Yet, the clear majority of modern courts
that have interpreted a standard interest clause under similar
circumstances have concluded that the policies mean what they say. 
See In re Estate of Tichota, 215 N.W.2d 885, 886-87 (Neb. 1974)
(explaining that the modern trend and majority rule holds insurers
liable for interest on the entire amount of the judgment); Weber v.
Biddle, 483 P.2d 155, 161-62 (Wash. Ct. App. 1971); 8A John Alan
Appleman and Jean Appleman, Insurance Law and Practice 4894.25
(1979) (listing cases applying the majority rule); 15A George J.
Couch, Couch on Insurance 56:39 (1983) (same).
 These opinions not only apply the straightforward terms
of the contracts, but produce sound policy. Compelling the insurer
to pay all of the interest which accrues pending appeal protects
the insureds, who may wish to pay the portion of the judgment in
excess of policy limits and stop the tolling of interest, but whose
lack of control over the litigation prevents them from doing so. 
See River Valley Cartage Co. v. Hawkeye-Security Ins. Co., 161
N.E.2d 101, 103 (Ill. 1959). The rule also serves to protect
plaintiffs from unreasonable delay on the part of insurers, or, as
in this case, compensate them for such delays. The rule does not
impose an unfair burden on insurers because they remain in control
of both the tolling of interest and the litigation, and can fairly
be expected to understand how the majority of jurisdictions
interpret standard interest clauses. See id.; Cf. Tichota, 215
N.W.2d at 887 (citing three articles in insurance industry journals
urging the continued adoption of the majority rule). We therefore
affirm the district court's determination that Republic is liable
for all interest accruing on the judgments from their date of
entry.
III. Judgment Day
 Having concluded that Republic's liability for interest
on the Fratus judgments began upon their date of final entry, we
must resolve a dispute as to that date. According to 28 U.S.C.
 1961, "[i]nterest shall be allowed on any money judgment in a
civil case recovered in a district court." Both parties
acknowledge that on December 14, 1988, the Clerk of the District
Court entered eighteen separate judgments pursuant to the jury
verdicts in the underlying case. However, the district court
subsequently certified to the Rhode Island Supreme Court a lone
remaining issue: whether U-Haul could be held jointly and severally
liable for the Fratus judgments. See Fratus v. Amerco, 575 A.2d
989, 990 (R.I. 1990). Republic claims to be obligated only to pay
interest which accrued after the district court acknowledged the
Rhode Island Supreme Court's decision on July 2, 1990, through the
last judgments entered in the case. According to Republic,
interest does not begin to accrue under 1961 until the entry of
"final" judgment, and the judgments entered pursuant to the
verdicts in the underlying case were not "final" because they were
not entered pursuant to Fed. R. Civ. P. 54(b). Under Rule 54(b),
when multiple parties or multiple claims are involved in an action,
the court may enter final judgment as to one or more of the claims
or parties, but on fewer than all of the claims or parties, only
upon an express determination that there is no just reason for
delay and upon an express direction for the entry of final
judgment. Because plaintiffs' claim that U-Haul was vicariously
liable for the judgments obtained against Obert and Drywall was
certified to the Rhode Island Supreme Court, a judgment was still
pending against at least one party to the original litigation. No
Rule 54(b) determination was made or requested in conjunction with
the December 1988 judgments.
 We agree that the district court made an error in
determining the date from which to compute post-judgment interest. 
This court has previously determined that, while a judgment need
not be final for all purposes in order to begin the tolling of
interest under 1961, see Marshall v. Avis Rent-A-Car of P.R.,
Inc., 866 F.2d 521, 523 (1st Cir. 1989), where a judgment is not
final for purposes of Rule 54(b), post-judgment interest does not
accrue. See id. at 522-23; Explosives Corp. of Am. v. Garlam Ent.
Corp., 817 F.2d 894, 903-04 (1st Cir. 1987). Because the December
1988 judgments did not address plaintiffs' claims of vicarious
liability against U-Haul, interest could not be imposed until
either those claims were resolved via recorded judgment or a Rule
54(b) determination was entered. 
 Thus, although the original judgments were set forth on
separate documents in accordance with Fed. R. Civ. P. 58, and were
entered on the civil docket by the district court clerk in
accordance with Fed. R. Civ. P. 79(a), they were not final
judgments to which post-judgment interest could attach. The
interest was improperly calculated from December 14, 1988, and,
upon remand, post-judgment interest is to be calculated from
July 2, 1990, the date that final and appealable judgments were
entered in the case.
IV. Pre-Judgment Interest
 Republic also contends that the district court erred in
awarding pre-judgment interest for the period from October 20, 1994
until June 13, 1997 -- the time in between Republic's tender of the
$25,000 during the present litigation and the district court's
final judgment in this case. Republic argues that the district
court erroneously awarded this pre-judgment interest pursuant to 28
U.S.C. 1961, which only provides authority for the awarding of
post-judgment interest. We agree. 
 In diversity cases, state law must be applied in
determining whether and how much pre-judgment interest should be
awarded. See Commercial Union Ins. Co. v. Walbrook Ins. Co., 41
F.3d 764, 774 (1st Cir. 1994). Under both Rhode Island and
Massachusetts law, the appropriate rate for pre-judgment interest
in a contract action is 12 percent. See Mass. Gen. Laws ch. 231,
 6C; R.I. Gen. Laws 9-21-10. In both states, the interest is
automatically added by the clerk of courts from the date of demand
until the judgment is entered. See id.
 Republic argues that these statutes do not apply to the 
present action because RL-1000 already provides for and limits the
interest for which it is responsible. It claims to have thus
"contracted out of" these statutes providing for pre-judgment
interest in civil actions. Indeed, parties may contract out of
these statutes. See id. (both statutes expressly allow contracting
parties to provide for alternate pre-judgment interest rates). 
However, Republic, through RL-1000, did not do so. As discussed
previously, RL-1000 provides that "[i]n addition to [the] limit of
liability," Republic will pay "[a]ll interest accruing after the
entry of judgment" (emphasis added) against its insured in a case
it defends. It would be illogical to interpret this provision to
somehow exclude pre-judgment interest provided by state statute on
a subsequent action demanding payment pursuant to the insurance
policy. Republic's contention to the contrary is merely an
outgrowth of its failed argument that RL-1000 limits the amount of
interest for which Republic could be held liable in this case.
 Finally, Republic notes that, at least under Rhode Island
law, a court may choose not to follow the statutory mandate if the
award of interest, in light of the facts of the case, does not
further policy goals. See Martin v. Lumberman's Mut. Cas. Co., 559
A.2d 1028, 1031 (R.I. 1989). According to Republic, the award of
pre-judgment interest in this case was so unfair and contrary to
public policy as to constitute an abuse of discretion on the part
of the district court. We do not agree. While Republic's
characterization of pre-judgment interest in this case as a
"windfall" to plaintiffs is not ludicrous, this award remains
entirely consistent with the public policy promoted by these pre-
judgment interest statutes. "Statutes that award prejudgment
interest generally serve the dual purposes of encouraging the early
settlement of claims . . . and compensating plaintiffs for waiting
for recompense to which they were legally entitled." Id. at 1031. 
In this case, plaintiffs have been unable to settle their claim
with Republic and have been forced to wait many years for the money
to which they were unquestionably entitled. While the sum of the
pre-judgment interest award in this case is quite sizable, we are
unprepared to say that the actions of the district court approach
an abuse of discretion. 
 Because, under either Massachusetts or Rhode Island
law, pre-judgment interest is awarded from the date of demand, seeMass. Gen. Laws ch. 231, 6C; R.I. Gen. Laws 9-21-10, the
district court erred in awarding pre-judgment interest from October 
20, 1994, the date Republic tendered its policy limits. Instead,
pre-judgment interest began to accrue on July 26, 1994, the date
that plaintiffs filed their complaint and demand for payment in the
district court. See Restatement (Second) of Contracts 354 cmt.
b (1981) (where "performance is to be rendered on demand, interest
does not begin to run until a demand is made [and if] the action
itself is considered to be the required demand, interest begins to
run from the time the action is brought"). We therefore affirm the
award of pre-judgment interest, but adjust the starting date of the
interest's accrual to July 26, 1994.
V. The Umbrella Policies
 At the time of the accident, Republic had issued three
additional policies, RU-01000, RU-02000 and RU-03000, to U-Haul. 
These umbrella policies provided U-Haul with up to three million
dollars of liability insurance coverage. According to plaintiffs,
these policies also covered "permissive users" of U-Haul vehicles,
and thus covered Obert and Drywall at the time of accident. As a
result, plaintiffs claim that Republic owes them an additional
three million dollars.
 The district court concluded that, because Obert and
Drywall were not named insureds under the umbrella policies, they
were not covered by the contracts. That conclusion relied upon an
incomplete and erroneous reading of the umbrella policies. The
language in the insurance policies at issue clearly defines an
"insured" as including "any person while using an automobile or
aircraft owned by . . . the named insured . . . provided the actual
use of the automobile or aircraft is . . . with the named insured's
permission." Because Obert was operating a vehicle owned by a
"named insured" and Obert's use of that vehicle "was with the named
insured's permission," there is no question that Obert was
"insured" within the definition provided in the body of the
umbrella policies. However, our inquiry does not end here.
 Appended to each of the umbrella policies is a series of
"Amendatory Endorsements." These endorsements each serve to alter,
amend or clarify terms contained within the main bodies of the
insurance contracts. By adding these endorsements, Republic is
able to tailor standard insurance contracts to meet a particular
insured's needs. 
 Each of the umbrella policies contains a special
endorsement which explicitly amends the definition of "insured"
provided in the body of the policy. These endorsements exclude
all renters of vehicles from coverage under the policies. If these
endorsements were agreed to by both Republic and U-Haul, and were
added to the umbrella policies before the date of the Fratus
accident, then the policies do not provide Obert, as a permissive
user of U-Haul's truck, with any coverage.
 Republic claims that these endorsements were part of the
original insurance contracts signed by U-Haul in 1985. However,
plaintiffs contend that these endorsements were not added to the
umbrella policies until after the date of the accident, and that
Republic is not truthful about the date of the endorsements' birth
in a nefarious attempt to preclude plaintiffs from collecting more
money. These accusations are indeed troubling. Furthermore, they
are not altogether unsupported. 
 In the lower left-hand corner of the amendatory
endorsements at issue is a typewritten notation which reads "7/2/86
dmm." No similar notations appear in the corners of the numerous
other amendatory endorsements which were part of the RU-01000 and
RU-02000 contracts when they were signed in 1985. However, similar
notations do appear in the lower left-hand corners of many
endorsements which were added to the contracts in 1986 and beyond. 
Republic offers no explanation for this inconsistency. 
Furthermore, in response to interrogatories, Republic denied any
knowledge of the identity of either the author of the policies at
issue or "dmm," and claims to be unable to determine or locate
these former employees.
 Thus, a material dispute of fact exists regarding the
original date of the endorsements amending the umbrella policies'
definition of "insured." If the amendments were added after
June 4, 1985, then Obert was insured under the policies. If the
amendment was added before June 4, 1985, the policies did not
provide any coverage for Obert. This is a factual dispute that
must be resolved by the district court upon remand.
VI. The Dates of Coverage of RU-03000
 The previous analysis has assumed, arguendo, that RU-
03000 covered U-Haul on the date of the June 4, 1985 accident. In
fact, the district court concluded that RU-03000 was not actually
in effect on that fateful day. According to plaintiffs, the
district court made a simple and correctable error.
 Plaintiffs maintain that the actual RU-03000 policy in
effect at the time of the accident could not be located by
Republic. As a result, the parties agreed to submit a successor
policy, the RU-03000 policy which covered the period from April 1,
1986 to April 1, 1987, into evidence for the purpose of providing
the court with the appropriate policy language. According to
plaintiffs, the court overlooked or was unaware of this arrangement
and, after noting the dates of the policy in evidence, mistakenly
ruled that RU-03000 was not in effect at the time of the accident. 
In support of their contention that RU-03000 was in effect at the
time of the accident, plaintiffs refer this court to an
interrogatory wherein Republic unequivocally states that RU-03000
had been in effect since 1982. 
 Republic denies that any arrangement was ever made to
substitute a later version of the RU-03000 policy into evidence in
exchange for the policy in effect at the time of the accident. It
contends that the RU-03000 policy entered into evidence was as
close as Republic came to ensuring U-Haul with an RU-03000 policy
during the time of the accident. It claims to have been confused
or mistaken when it responded to the interrogatory in which it
indicated that U-Haul had been insured under an RU-03000 policy
since 1982.
 We conclude, upon examination of the district court
opinion, that the court did not make a factual finding regarding
the "authenticity" of the RU-03000 policy in evidence. The opinion
reveals that the court was unaware that the policy was alleged by
plaintiffs to merely represent a surrogate exhibit, substituted for
evidence which was lost or misplaced by Republic. We therefore
remand to the district court for a factual determination on this
question.
 CONCLUSION
 For the reasons stated herein, we affirm the district
court's award of pre- and post-judgment interest on the underlying
judgments in this case, but remand for a recalculation of that
interest at 5.75% from July 2, 1990 until July 26, 1994 and at 12%
from July 26, 1994 until June 13, 1997 (in addition to the interest
which has accumulated on appeal and remand). Furthermore, we
remand the case for factual findings regarding the dates that
amendatory endorsements altering the definition of "insureds" were
added to the umbrella policies and for factual findings regarding
the dates of U-Haul's insurance coverage by policy RU-03000. On
remand, the district court may examine the effect, if any, of the
rental agreement on the applicability of the umbrella policies. Each party to bear its own costs.